UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| MICHAEL K GREGORY, | ) |
| Plaintiff, | ) |
| v. | ) No. 2:20-cv-00445-JRS-MJD |
| BYRD, | ) |
| Defendant. | ) |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Michael Gregory is a prisoner currently incarcerated at New Castle Correctional Facility, but the events that gave rise to his complaint occurred at the Wabash Valley Correctional Facility ("WVCF"). Upon screening of the complaint, the Court allowed Mr. Gregory to proceed on one claim: that Defendant Dr. Samuel Byrd violated Mr. Gregory's Eighth Amendment rights by acting with deliberate indifference to Mr. Gregory's medical needs. Dkt. 4 at 4.

Dr. Byrd moved for summary judgment contending that Mr. Gregory's deliberate indifference claim fails because he did not suffer from an objectively serious medical condition on July 7, 2017, and because Dr. Byrd used his medical judgment at Mr. Gregory's July 7, 2017, appointment. Dkt. 114.

For the reasons that follow, Dr. Byrd's motion for summary judgment, dkt. [114] is **granted** and final judgment shall be entered.

### I. Legal Standard

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the

Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

Despite having notice of his opportunity to respond to the summary judgment motion, *see* dkt. 116, Mr. Gregory failed to respond.[1] His failure to respond requires the Court to treat the movant's version of the facts as uncontested. *See Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994). Accordingly, facts alleged by Dr. Byrd in the Motion are "admitted without controversy" so long as support for them exists in the record. S.D. Ind. L.R. 56-1(f); *see* S.D. Ind.

---

[1] Mr. Gregory has filed three submissions since Dr. Byrd filed his motion for summary judgment. Dkts. 118, 120, 125. However, none of Mr. Gregory's submissions address any of the substantive arguments on summary judgment. Rather, the filings attempt to rehash unrelated issues such as discovery disputes and extensions of time. *See* dkts. 118, 120, 125.

L.R. 56-1(b) (party opposing judgment must file response brief and identify disputed facts). Even though Mr. Gregory has failed to respond, Defendant Byrd must still show that summary judgment is proper given the undisputed facts. *See Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021).

## II.  Factual Background

Because Defendant has moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Mr. Gregory and draws all reasonable inferences in his favor. *Khungar*, 985 F.3d at 572–73.

### A.  Mr. Gregory's Medical History related to his Complaint

Mr. Gregory had an altercation with correctional staff at the Indiana State Prison on April 1, 2017. Dkt. 114-2 at 1-3 (Mr. Gregory's Electronic Medical Record). The next day, Mr. Gregory had a visit with non-party registered nurse Debra Rose, who noted a small laceration to his eye. *Id.* at 2. Nurse Rose noted that Mr. Gregory was independent in self-care and ambulation. *Id.* Mr. Gregory maintained an active prescription for aspirin; no additional medications were prescribed. *Id.*

On April 12, 2017, Mr. Gregory had a provider visit with non-party Dr. Joseph M. Thompson. *Id.* at 3-5. During this appointment, Mr. Gregory reported that during the April 1 assault, he was punched in the face, lower back, and was "stumped" on the left hip. *Id.* Mr. Gregory reported pain in both hands and his neck. *Id.* Dr. Thompson conducted a physical examination and noticed a bruise to Mr. Gregory's left shoulder. *Id.* Dr. Thompson noted tenderness and moderate pain with motion. *Id.* On the cervical spine, range of motion was mildly reduced. *Id.* Dr. Thompson documented moderate pain with range of motion in the right shoulder, left knee, and right knee. *Id.* Dr. Thompson noted that Mr. Gregory was in no acute stress but had multiple contusions. *Id.* Mr. Gregory was not prescribed any additional medications, though Dr. Thompson continued Mr.

3

Gregory's daily aspirin prescription. *Id.* Aspir-Low 81, commonly known as aspirin, is used to reduce fever and relieve mild to moderate pain. Dkt. 114-1 ¶ 13. Dr. Thompson did not submit any outpatient requests for specialized appointments. Dkt. 114-2 at 3-5. Mr. Gregory did not have any other visits for complaints of pain until July 7, 2017. *Id.*

### B.  Mr. Gregory's Interaction with Dr. Byrd on July 7, 2017

Mr. Gregory was first seen by Dr. Byrd on July 7, 2017. Dkt. 114-1 ¶ 8 (Affidavit of Dr. Byrd); dkt. 114-2 at 6-8. During that appointment, Mr. Gregory complained of pain attributed to an altercation with correctional staff at Indiana State Prison. Dkt. 114-2 ¶ 10. Mr. Gregory reported subjective pain at a level that Dr. Byrd believed was inconsistent with his physical presentation. *Id.* ¶ 23. Dr. Byrd observed no lacerations or contusions during this visit. *Id* ¶ 22; dkt. 114-2 at 6-8. During the appointment, Dr. Byrd reviewed Mr. Gregory's medical records and noted that he was seen in April of 2017 for an alleged altercation. *Id.* ¶ 11.

 Dr. Byrd examined Mr. Gregory's vital signs, and noted that his temperature, pulse, and blood pressure were all within reasonable limits. *Id.* ¶ 23. Acute or chronic pain can increase blood pressure due to the activation of the body's stress response. *Id.* ¶ 12. But despite Mr. Gregory's verbal complaints, his blood pressure at 130/74 was unremarkable. *Id.* While the systolic was borderline high, the diastolic reading was within normal limits. *Id.* Mr. Gregory's vital signs did not suggest that he was "about to pass out" as he alleged. *Id.* ¶ 25. Thus, Dr. Byrd had concerns about the accuracy of Mr. Gregory's subjective complaints. *Id.*

During the July 7 appointment, Mr. Gregory reported pain "all over" but specifically noted pain in his shoulders, wrists, low back, and right hip. *Id.* ¶ 20. Mr. Gregory requested a "double cuff"[2] order due to pain in his shoulders. *Id.* Because Mr. Gregory requested a double cuff order,

---

[2] Defendant did not define "double cuff" but the Court assumes it is a more comfortable position for inmates to be handcuffed.

4

Dr. Byrd instructed him to turn around so that he could see how much strain was placed on his shoulder with a single cuff. *Id.* ¶ 21. Dr. Byrd noted that Mr. Gregory was able to bend his elbows, which relieved stress on the shoulders. *Id.* Dr. Byrd attempted to explain to Mr. Gregory how shoulder stress could be relieved, but Mr. Gregory verbally disagreed with the assessment and became visibly upset. *Id.* Agitated, Mr. Gregory called Dr. Byrd a "quack." Dkt. 114-3 at 160 (Deposition of Michael Gregory). Dr. Byrd ended the appointment due to Mr. Gregory's behavior. Dkt. 114-1 ¶ 26. Dr. Byrd continued Mr. Gregory's aspirin prescription, which would continue to relieve mild to moderate pain symptoms. *Id.* Mr. Gregory disagreed with the appointment ending but stated he was ready to leave as "the dirt had already been dug." Dkt. 114-3 at 171. Mr. Gregory decided he would not allow Dr. Byrd to treat or examine him further. *Id.*

### C. Mr. Gregory's Subsequent Interactions with Dr. Byrd

Mr. Gregory returned to restrictive status housing where members of nursing staff regularly walked the unit. Dkt. 114-2 at 9. Mr. Gregory made no complaints to medical staff for the entire duration of July 2017. *Id.* This included six check-ins following the appointment with Dr. Byrd on July 7. *Id.*

Mr. Gregory met with Dr. Byrd again on August 19, 2019, for a chronic care appointment where they discussed Mr. Gregory's hyperlipidemia and hypertension. Dkt. 114-1 ¶ 28; dkt. 114-2 at 10-13. Mr. Gregory's medical records indicate that he was negative for joint pain and muscle pain. Dkt. 114-1 ¶ 28; dkt. 114-2 at 10-13. During the August 19, 2019, visit, Mr. Gregory did not report any concerns regarding ongoing chronic pain or pain stemming from the April 2017 incident. Dkt. 114-1 ¶ 28; dkt. 114-2 at 10-13. Had Mr. Gregory reported ongoing pain in August of 2019, Dr. Byrd would have evaluated his complaints. Dkt. 114-1 ¶ 29.

On August 10, 2020, Mr. Gregory met with Dr. Byrd for another chronic care appointment where they discussed Mr. Gregory's hyperlipidemia and hypertension. *Id.* ¶ 30. At this appointment, Mr. Gregory raised a new concern, pruritus,[3] which Dr. Byrd evaluated. *Id.* Mr. Gregory showed some excoriated areas on his left shin. *Id.* Dr. Byrd diagnosed Mr. Gregory with eczema and prescribed a topical ointment. *Id.*

Dr. Byrd remained open to discussing new and ongoing medical complaints with Mr. Gregory. *Id.* ¶ 31. Had Mr. Gregory raised concerns about ongoing pain, Dr. Byrd would have evaluated these complaints. *Id.* ¶ 32.

While housed in the SHU[4] Mr. Gregory had access to health care request forms and medical staff. Dkt. 114-3 at 11-16, 27. Despite his assertion here that he remained in pain, Mr. Gregory never again raised complaints regarding "chronic" or "intense" pain again with medical staff at WVCF. *Id.* at 179. Mr. Gregory "never discussed [his] injuries with [Dr. Byrd] in any way" after Mr. Gregory's appointment in July of 2017 because Dr. Byrd had broken his trust with him. *Id.* at 158.

### III.    Discussion

The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on the states, through the Fourteenth Amendment, "to provide adequate medical care to incarcerated individuals." *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical

---

[3] Pruritus is the medical term for itchy skin. *See Mayo Clinic*, "Itchy Skin (pruritus)," https://www.mayoclinic.org/diseases-conditions/itchy-skin/symptoms-causes/syc-20355006 (last updated Oct. 23, 2024).

[4] Defendant does not define SHU, but the Court understands it to mean the secured housing unit at WVCF.

need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

Deliberate indifference requires more than negligence or even objective recklessness. *Id*. Thus, Mr. Gregory "must provide evidence that an official actually knew of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016).

"Of course, medical professionals rarely admit that they deliberately opted against the best course of treatment. So in many cases, deliberate indifference must be inferred from the propriety of their actions." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 241 (7th Cir. 2021).

The Seventh Circuit has held that deliberate indifference occurs when the defendant:

- renders a treatment decision that departs so substantially "'from accepted professional judgment, practice, or standards as to demonstrate that'" it is not based on judgment at all. *Petties*, 836 F.3d at 729 (quoting *Cole v. Fromm*, 94 F.3d 254, 260 (7th Cir. 1996)).

- refuses "to take instructions from a specialist." *Id.*

- persists "in a course of treatment known to be ineffective." *Id.* at 729–30.

- chooses "an 'easier and less efficacious treatment' without exercising professional judgment." *Id.* at 730 (quoting *Estelle*, 429 U.S. at 104 n.10).

- effects "an inexplicable delay in treatment which serves no penological interest." *Id.*

Dr. Byrd is entitled to summary judgment on the deliberate indifference claim against him. Mr. Gregory contends that Dr. Byrd was deliberately indifferent because he "spewed aggressive and angry derision in retaliation to [his] injuries and pain and cast doubt on what happened to [Mr.

7

Gregory]." Dkt. 1 at 2. He further describes that Dr. Byrd was dismissive towards him at the July 7, 2017, appointment.[5]

Dr. Byrd first argues that Mr. Gregory did not suffer from an objectively serious medical condition on July 7, 2017. Dkt. 115 at 9. The record supports Dr. Byrd's argument. Specifically, Mr. Gregory was not diagnosed with an objectively serious medical condition warranting further care or treatment before his first appointment with Dr. Byrd on July 7, 2017. During Mr. Gregory's April 12, 2017, provider visit with Dr. Thompson, Mr. Gregory was assessed with bruises and contusions on his body, continued with aspirin, and requested no further evaluation or follow up. Dkt. 114-2 at 3-5. Dr. Byrd argues that Mr. Gregory did not arrive to his July 7, 2017, with a previously diagnosed medical condition for which treatment was mandated, nor was it so obvious that a lay person would recognize the need for further care. *Perry v. Sims*, 990 F.3d 505, 511 (7th Cir. 2021).

Further, Dr. Byrd argues, and the Court agrees, that a bruise generally does not rise to the level of a serious medical condition. *See Pinkston v. Madry*, 440 F.3d 879, 891 (7th Cir. 2006) (split lip and swollen cheek were not objectively serious medical needs); *Davis v. Jones*, 936 F.2d 971, 972-73 (7th Cir. 1991) (one-inch cut was not serious medical need); *see also Wine v. Thurmer*, No. 08-cv-72-BBC, 2008 U.S. Dist. LEXIS 37924, 2008 WL 2562965, at *4 (W.D. Wis. Apr. 29, 2008) ("A person can be bruised, swollen, bleeding and hurting and not have a serious medical need."); *Baird v. Knop*, No. 13-cv-979-GPM, 2013 U.S. Dist. LEXIS 162062, 2013 WL 6038264, at *4 (S.D. Ill. Nov. 14, 2013) (bruises on arm and cut on wrist did not constitute objectively serious medical condition); *Caldwell v. McEwing*, No. 00-1319, 2006 U.S. Dist. LEXIS 70578,

---

[5] Mr. Gregory's complaint indicates that his appointment with Dr. Byrd was on July 14, 2017. Dkt. 1 at 2. However, Mr. Gregory's medical records indicate that his first appointment with Dr. Byrd was on July 7, 2017. Dkt. 114-2; *see also* dkt. 114-1 ¶ 9.

2006 WL 2796637, at *11 (C.D. Ill. Sept. 28, 2006) ("[M]inor bruises and scrapes do not constitute a serious medical need.").

While there are instances where pain may constitute an objectively serious medical condition, the instant scenario does not qualify. Mr. Gregory made no verbal complaints of injury or pain to the nursing staff available for consult while he was in restrictive status housing for the six days before meeting with Dr. Byrd for the first time. Dkt. 114-2 at 9. Mr. Gregory had not been seen for symptoms of pain since his provider visit with Dr. Thompson on April 12, 2017. *See* 114-2. When Dr. Byrd evaluated Mr. Gregory on July 7, 2017, Dr. Byrd observed no lacerations or contusions. Dkt. 144-1 ¶ 22; dkt. 114-2 at 6-8. The Court finds that Mr. Gregory's medical need was not objectively serious, and Dr. Byrd is entitled to judgment as a matter of law.

Even if Mr. Gregory did have an objectively serious medical need, Dr. Byrd did not act with deliberate indifference. Mr. Gregory's complaint focuses on Dr. Byrd's attitude and demeanor during their July 7, 2017, appointment. Dkt. 1 at 2. But verbal harassment and rude comments by prison staff does not violate the Constitution. *See DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000). Moreover, unprofessional conduct likewise does not violate the Constitution. *Patton v. Przybylski*, 822 F.2d 697, 700 (7th Cir. 1987).

Rather than speculate as to whether Dr. Byrd was dismissive during the July 7, 2017, appointment, the Court must examine the totality of Mr. Gregory's care as it relates to his complaint. *Walker v. Peters*, 233 F.3d 494, 501 (7th Cir. 2000). Mr. Gregory was first seen by Dr. Byrd on July 7, 2017. Dkt. 114-1 ¶ 8, dkt. 114-2 at 6-8. This July 7 appointment is the basis for which Mr. Gregory complains to have suffered from deliberate indifference. Dkt. 1 at 2.

Based on the designated evidence, no reasonable jury could conclude that Dr. Byrd was deliberately indifferent to Mr. Gregory during the July 7, 2017, appointment. During the

9

appointment, Mr. Gregory complained of pain attributed to an altercation with correctional staff at Indiana State Prison. Dkt. 114-2 ¶ 10. Mr. Gregory reported subjective pain at a level that Dr. Byrd believed was inconsistent with his physical presentation. *Id.* ¶ 23. Dr. Byrd observed no lacerations or contusions on July 7, 2017. *Id* ¶ 22; dkt. 114-2 at 6-8. During the July 7, 2017, appointment, Dr. Byrd reviewed Mr. Gregory's medical records and noted that he was seen in April of 2017 for an alleged altercation. Dkt. 114-1 ¶ 11.

Dr. Byrd examined Mr. Gregory's vital signs, and noted that his temperature, pulse, and blood pressure were all within reasonable limits. *Id* ¶ 23. Mr. Gregory's unremarkable blood pressure and normal vital signs caused Dr. Byrd to question the accuracy of Mr. Gregory's subjective complaints. *Id* ¶¶ 12, 25.

During the July 7, 2017, appointment, Mr. Gregory reported pain "all over" but specifically noted pain in his shoulders, wrists, low back, and right hip. *Id.* ¶ 20. When Mr. Gregory requested a "double cuff" order due to pain in his shoulders, Dr. Byrd instructed him to turn around so that he could see how much strain was placed on his shoulder with a single cuff. *Id.* ¶ 21. Dr. Byrd noted that Mr. Gregory was able to bend his elbows, which relieved stress on the shoulders. *Id.* Dr. Byrd attempted to explain to Mr. Gregory how shoulder stress could be relieved, but Mr. Gregory verbally disagreed with the assessment and became visibly upset. *Id.* Agitated, Mr. Gregory called Dr. Byrd a "quack." Dkt. 114-3 at 160. Dr. Byrd ended the appointment due to Mr. Gregory's behavior. Dkt. 114-1 ¶ 26. Dr. Byrd continued Mr. Gregory's aspirin prescription, which would continue to relieve mild to moderate pain symptoms. *Id.*

The designated evidence reflects that Dr. Byrd's treatment decisions were based on medical judgment. Where the evidence shows that a decision was based on medical judgment, a jury may

not find deliberate indifference, even if other professionals would have handled the situation differently. *Dean*, 18 F.4th at 241-42.

Mr. Gregory has not designated any evidence from which a reasonable jury could infer that this course of treatment was "so far afield of accepted professional standards that a jury could find it was not the product of medical judgment." *Cesal v. Moats*, 851 F.3d 714, 724 (7th Cir. 2017) (cleaned up). Instead, Mr. Gregory only shares his disagreement with Dr. Byrd's initial assessment on July 7, 2017. But disagreement with a physician's chosen course of medical treatment alone is insufficient to establish a claim of deliberate indifference. *Thomas v. Martija*, 991 F.3d 763, 772 (7th Cir. 2021).

While housed in the SHU Mr. Gregory had access to health care request forms and medical staff, including six check-in appointments with nursing staff. Dkt. 114-3 at 11-16, 27; dkt. 114-2 at 9. Despite his assertion that he remained in pain, Mr. Gregory never again raised complaints regarding "chronic" or "intense" pain again with medical staff at WVCF. Dkt 114-3 at 179. The undisputed evidence also reflects that Mr. Gregory never discussed residual pain from the April 2017 incident with Dr. Byrd again. *Id.* at 158. Had Mr. Gregory raised concerns about ongoing pain, Dr. Byrd would have evaluated these complaints. Dkt. 114-1 ¶ 32.

Mr. Gregory stated that he decided he would not allow Dr. Byrd to treat or examine him further. Dkt. 144-3 at 171. But the designated evidence also reflects that Mr. Gregory saw Dr. Byrd for two chronic care appoints for other issues after the July 7, 2017, appointment, and Dr. Byrd remained open to discussing new and ongoing medical complaints with Mr. Gregory. Dkt. 114-1 ¶ 31. Specifically, in August 2019, Dr. Byrd met with Mr. Gregory for a chronic care appointment to discuss Mr. Gregory's hyperlipidemia and hypertension. Dkt. 114-1 ¶ 28; dkt. 114-2 at 10-13. Mr. Gregory did not report any issues related to the April 2017 incident. Dkt. 114-1 ¶ 28; dkt. 114-

11

2 at 10-13. In August 2020, the two met for another chronic care appointment to discuss the aforementioned chronic conditions. Dkt. 114-1 ¶ 30. At this appointment, Mr. Gregory complained about itchy skin, and Dr. Byrd diagnosed him with eczema and prescribed an ointment. *Id.*

Given the totality of Dr. Byrd's treatment of Mr. Gregory, no reasonable jury could conclude that Dr. Byrd's actions evinced deliberate indifference. Accordingly, for this additional reason, Dr. Byrd is entitled to summary judgment.

## IV.   Conclusion

For the foregoing reasons, Dr. Byrd's Motion for Summary Judgment, dkt. [114] is **granted.** Final judgment shall now issue.

**IT IS SO ORDERED.**

Date: 3/20/2025

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

MICHAEL K GREGORY
852611
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
P.O. Box E
NEW CASTLE, IN 47362

All Electronically Registered Counsel